STATE v. ROSCOE SIMMONS.

(Filed 22 February, 1922.)

**1. Intoxicating Liquor—Spirituous Liquor—Possession—Evidence—Presumption—Warrant—Search and Seizure.**

The defendant was seen entering with a suit-case into a house of another by the officers, and upon their following him, he endeavored unsuccessfully to escape by the back door, and when the suit-case was opened, it was found to contain eight quarts of liquor that smelled like brandy: *Held*, the seizure of the liquor under the circumstances did not require a search warrant.

**2. Same—Unlawful Transportation.**

Where the defendant has been arrested and eight quarts of spirituous liquor found in a suit-case he was carrying into the house of another, its possession is *prima facie* case of the unlawful purpose of sale, sufficient to convict him thereof; and, also, for unlawfully transporting the same. C. S., 3379.

**3. Intoxicating Liquor—Spirituous Liquor—Seizure—Unlawful Possession —Evidence.**

Where the *prima facie* case of unlawful sale of spirituous liquor arises from the possession, its capture by the officers is not illegal, and its being given to the jury for them to taste and smell, in corroboration of the other evidence, is not erroneous; and the liquor being the *corpus delicti*, such evidence would be competent had it been unlawfully seized, or in the illegal possession of the officers.

APPEAL by defendant from *Horton, J.,* at November Term, 1921, of PASQUOTANK.

The defendant was indicted in three counts:

1. Having in his possession a quantity of intoxicating liquors for the purpose of sale, to wit, nine quarts of grape brandy.

2. Transporting the same from one point within the State to another point in the State.

3. The receipt of the same in fifteen days.

General verdict of guilty. Judgment. Appeal by defendant.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Aydlett & Simpson and Thompson & Wilson for defendant.*

CLARK, C. J. The evidence for the State was that the chief of police of Elizabeth City, accompanied by two officers, about 11 o'clock at night, went to the house where Bessie McGee lived. Soon after they arrived an automobile drove up and three persons got out, to wit, the defendant (Roscoe Simmons) and two others. Simmons was carrying in his hand

a grip and went with it into the house.   Sending one of his men to the back door of the house, the chief of police, with the other officer, immediately followed the parties into the house.   The defendant seeing the officers entering at the front attempted to make his escape at the rear, though he testified that he went to the back porch to get some water. The grip that Simmons carried into the house, when examined by the officers, was found to contain eight quarts, which smelt like peach brandy, and they testified that in their opinion it was intoxicating liquor.   The officers arrested Simmons and Bessie McGee, and took charge of the grip with the eight quarts of liquor, which was introduced in the evidence by the State and under objection by the defendant, the jury was permitted to smell it and taste it, if they desired, to determine whether it was intoxicating or not.   The officers at the time of the arrest had no warrant for the arrest of the parties, and though something was said in the evidence about a search warrant, it is admitted that it was not in legal form, and is not considered.

The defendant presents two points: (1) That the liquor having been obtained on an illegal search warrant was not admissible as evidence; (2) that the court committed error in permitting the jury to smell and taste the liquor.

The officers found the liquor in actual possession of the defendant, with grounds, in their judgment, to believe that it was an illegal article, and had a right to seize the same. *S. v. Campbell,* 182 N. C., 911. It was for the jury to decide whether it was intoxicating liquor, and it was permissible for them to use their sense of taste and smell in passing upon the question.   They were not restricted to the testimony of the officers who acquired the information upon which they based their opinion by the same method.

If intoxicating, as the jury found upon the testimony of the officers, corroborated possibly by their own sense of taste and smell, the defendant was properly found guilty, for he was illegally transporting spirituous liquor, and also under C. S., 3379, he was *prima facie* guilty of having more than a gallon in his possession for the purpose of sale.

The defendant in his evidence contented himself with testifying that he had nothing to do with the suit-case, and knew nothing of its contents, and that Satterfield carried the suit-case into the house, but he did not testify that he was carrying this liquor for his own use.   *S. v. Coleman,* 178 N. C., 757. If he had so testified, the jury were at liberty to draw a different inference from the defendant's possession of eight quarts.   The defendant contends that the grip and the liquor were illegally captured, and therefore it was not admissible in the evidence against him.

The capture of eight quarts, which the jury found was in the possession of the defendant, raised *prima facie* the presumption that it was illegally

in his possession and its capture was not illegal. *S. v. Campbell, supra.*
To the same effect *Adams v. New York,* 192 U. S., 585; *S. v. Bradley,*
96 Maine, 12; *S. v. Krinski,* 78 Vermont, 162.

In *S. v. Bradley, supra,* it is held: "If, in the case of a seizure of
intoxicating liquors without a warrant, a respondent is arrested at the
time of the seizure and before the issuance of the warrant, even if such
arrest is illegal, it in no way affects the validity of the complaint and
warrant, and cannot be taken advantage of by a respondent charged
with having intoxicating liquors in his possession for an unlawful pur-
pose, either before or after conviction."

In *S. v. Krinski, supra,* it is said: "On a prosecution for keeping for
sale intoxicating liquors without a license, it was proper to admit in
evidence liquors which had been seized, irrespective of the legality of
the warrant."

The defendant was not the owner of the house. No question arises as
to the validity of a search warrant. The defendant was simply "caught
in the act" with the goods upon him, and the officers under the authority
of our statute took the prisoners and the illegal goods before a magis-
trate and proceeded regularly.

In *Adams v. New York,* 192 U. S., 595, the Court said: "It may be
mentioned in this place that though papers and other subjects of evi-
dence have been illegally taken from the possession of the party against
whom they are offered, or otherwise illegally obtained, there is no valid
objection to their admissibility if they are pertinent to the issue. The
Court will not take notice how they were obtained, whether lawfully or
unlawfully, nor will it form an issue to determine that question." This
is quoted with approval in *S. v. Wallace,* 162 N. C., 622, and has been
the consistent opinion of this Court in all similar cases. The defendant
contends that *Adams v. New York* has been overruled in *Gouled v. U. S.,*
28 February, 1921, but we do not so understand it. We understand the
distinction there to be that where the article itself is the *corpus delicti,*
as illicit liquor, or a weapon illegally carried, and in similar cases, the
article itself, however obtained, is admissible in evidence, but that the
Court under the *Gouled case* will not permit a paper surreptitiously or
illegally taken from the possession of a defendant to be used as evidence
in a matter in which it is not the basis of the offense for which the
defendant is indicted.

Suppose instead of a grip the defendant and another had been seen
to enter the house with pistols, and soon thereafter a shot was heard, and
upon the officers entering the building one of the men was found lying
dead on the floor and the other was caught attempting to escape from
the rear. Is it possible that the finding of the pistol and of the dead
man could not be put in evidence because there was no search warrant?

This would be carrying the protection of the illegal and clandestine violation of law, by a technicality, to an extent probably heretofore unheard of in a court of justice.

In this case the defendant entered the house carrying a grip full of intoxicating liquor and was captured at the back door. What has a search warrant to do with this state of facts? The defendant was caught "in the act," and has made no explanation, satisfactory to the jury, to account for his connection with the transportation of the liquor in the grip which he carried into the house.

No error.