### STATE *vs.* WASYL CHUCHOLA.

1.  SEARCH AND SEIZURES—ADMISSION IN EVIDENCE OF PROPERTY UNLAWFULLY SEIZED NOT PROHIBITED BY FOURTH AMENDMENT.

The Fourth Amendment to the United States Constitution, relating to unreasonable searches and seizures, does not prohibit the use in evidence of articles illegally seized, but only the unlawful search and seizure; the remedy

for such unlawful seizure being against the wrongdoer, and not its exclusion as evidence.

2. CRIMINAL LAW—INTOXICATING LIQUOR MAY BE USED IN EVIDENCE, THOUGH ILLEGALLY SEIZED.

Though property taken illegally from a person suspected of crime should be returned on proper proceedings, even though it would be competent evidence against him, under 29 *Del. Laws, c.* 10 § 2, providing that the possession of intoxicating liquor constitutes the crime, intoxicating liquor is not property, and though illegally seized, may be used in evidence without violating any constitutional provision.

3. INTOXICATING LIQUORS—INDICTMENT CHARGING UNLAWFUL POSSESSION HELD SUFFICIENT.

An indictment for the unlawful possession of spirituous liquor, though it did not charge the "selling or keeping, or storing for sale," required under *Loose Law*, § 9, was valid under 29 *Del. Laws, c.* 10, § 2, providing that the possession at any one time of more than one quart of spirituous liquor is unlawful.

RODNEY, J., dissenting.

(*September* 29, 1922.)

PENNEWILL, C. J., RICE and RODNEY, J. J., sitting.

*Aaron Finger* and *Clarence A. Southerland,* Deputy-Attorneys-General, for the State.

*Philip L. Garrett, J. Frank Ball, George W. Lilly, Ayres J. Stockly* and *J. Paul Green* for defendant.

Court of General Sessions for New Castle County, September Term, 1922.

Indictment for illegal possession of spirituous liquors, No. 22, May term, 1922. Motion for the return or destruction of liquor illegally seized.

Before pleading to the indictment, and, therefore, before trial the defendant presented the following petition:

"The petition of Wasyl Chuchola, the defendant in the above-entitled case, respectfully represents:

"1. That he is a resident of the city of Wilmington, New Castle county and state of Delaware, and resides in said city at No. 429 Bradford street.

"2. That on the——day of April, A. D. 1922, certain police officers of the city of Wilmington did enter his residence without authority of law, and did search the same and did seize certain alleged alcoholic liquor in said house.

"3. That said house is occupied as a dwelling house.

"4. That said dwelling house is occupied by your petitioner, his wife, and by certain other men who are boarders in the house.

"5 .That the said officers who searched said house and arrested your petitioner had with them a certain search warrant which was not sufficient in law in that the said search warrant did not describe the premises to be searched, and was further defective in that the said search warrant did not describe the intoxicating liquors to be seized; and the said search warrant was further defective in that it was served in the nighttime; and the said search warrant was further defective in that it was issued without sufficient cause.

"Your petitioner, therefore, prays this honorable court to make an ordef upon the Attorney-General of the state of Delaware to return to the owner or said property the property so taken and held or to destroy same, and your petitioner will ever pray," etc.

There was filed in the case the following agreed statement of facts:

"On this 11th day of May, A. D. 1922, it is agreed by and between Sylvester D. Townsend, Jr., Attorney-General, for the state of Delaware, and Philip L. Garrett, Esq., J. Frank Ball, Esq., George W. Lilly, Esq., Ayres J. Stockly, Esq., and J. Paul Green, Esq., counsel for Wasyl Chuchola, that the following agreed statement of facts shall be submitted to the court upon the petition filed by the defendant in the above-stated case, for the opinion of the court, the defendant reserving unto himself any rights he may have with respect to suing out a writ of error:

"1. That on or about the 21st day of April, A. D. 1922, the defendant above named was arrested on a charge of having in his possession more than one quart of spirituous liquors, contrary to law, and subsequently an indictment was found against him by the grand jury of New Castle county.

"2. That said arrest was made under the following circumstances, viz.:

"On the day above mentioned, duly constituted police officers of the city of Wilmington, having in their possession a search warrant for the searching of the defendant's said house, entered the same and upon searching said premises found in said house certain containers containing more than one quart of spirituous liquor, which said containers containing the said spirituous liquors the said police officers then and there seized.

"3. The said police officers also then and there upon the finding of said spirituous liquors placed under arrest the said defendant.

"4. That the said search warrant mentioned in the preceding paragraph was defective and void.

"5. If the court should be of opinion that the intoxicating liquors referred to in the above-agreed statement of facts cannot legally be used as evidence in the trial of the said defendant in the above-stated case, then the court shall direct that said intoxicating liquors shall be excluded from use in evidence in the trial of said case and said liquors shall be ordered destroyed; otherwise, that the prayer of the petition be refused and the petition dismissed."

PENNEWILL, C. J., delivering the opinion of the majority of the court:

In this case, which may be termed a "house" case, in contradistinction to a "street" case, the house of the defendant was searched by police officers, resulting in the discovery and seizure of more than one quart of spirituous liquor.

It is admitted by the state that the warrant under which the search was made was insufficient and illegal, not being in the form prescribed by law, and that. the court may, therefore, consider that the search and seizure were made without a warrant.

The statute under which the defendant was indicted is in part as follows:

"It shall be unlawful for any person  *  *  *  to have in his [or her] possession, at any one time, more than one quart of spirituous liquors." Chapter 10 (2), 29 *Laws of Delaware*, 19.

There are two questions to be considered:

1.   Must the liquor that was seized be returned or destroyed by order of the court, upon the application of the defendant made before the trial, so that it cannot be used against him as evidence at his trial?

2.   Can the defendant be indicted for the unlawful possession of liquor when paragraph 9 of the law of this state commonly known as the "Loose Law" provides that the person in charge of the premises where such liquors are found shall be subject to trial on the charge of selling or keeping or storing for sale unlawfully such liquors?

The first question is particularly important both to the accused and the state, and its importance is intensified by the fact that the Supreme Court of the United States has in several cases passed upon questions which the defendant claims are identical in principle with the one before this court.

The real question before us is, can spirituous liquors, the possession of which is unlawful, found and seized in defendant's house without a warrant, be used as evidence against him at his trial?

Whatever may have been the law before, the United States Supreme Court has held in the later cases that papers, documents and other private property, seized in the house or office of the owner, without a warrant, cannot be used in evidence at the trial, if their return is asked for at the proper time, because the seizure was in violation of the Fourth Amendment to the federal Constitution, which provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," etc

The corresponding provision of the Delaware Constitution is substantially similar.

It has also been decided by said Supreme Court that property seized without a warrant must be returned to the owner if application therefor is seasonably made before the trial. *Gouled v. United States*, 225 *U. S.* 298, 41 *Sup. Ct.* 261, 65 *L. Ed.* 647; *Weeks v. United States*, 232 *U. S.* 383, 34 *Sup. Ct.* 341, 58 *L. Ed.* 652, *L. R. A.* 1915B, 834, *Ann. Cas.* 1915C, 1177; and other cases.

The history of the law under consideration is interesting, but it cannot be gone into here at any length.

Prior to the decision by the Supreme Court in 1884 of *Boyd v. United States*, 116 *U. S.* 616, 6 *Sup. Ct.* 524, 29 *L. Ed.* 746, the admissibility of evidence does not seem to have been affected by the illegality of the means through which the evidence was obtained, and this doctrine had and still has the strong support of Mr. Wigmore, as well as the endorsement of the majority of the state courts. See article by Mr. Wigmore in Amer. Bar Ass'n Journal for August, 1922, in which the cases are collected.

In 1841 *Wilde, J., in Com. v. Dana*, 2 *Metc. (Mass.)* 329, stated the law as follows:

"Admitting that the lottery tickets and materials were illegally seized, still this is no legal objection to the admission of them in evidence. If the search were illegal, or if the officer serving the warrant exceeded his authority, the party on whose complaint the warrant issued, or the officer, would be responsible for the wrong done. But this is no good reason for excluding the papers seized * * * if they were pertinent to the issue."

In that case the possession of lottery tickets was held to be unlawful, and the tickets liable to be seized as belonging to the *cor-*

Opinion.

*pus delicti*. The law declared in this case was the generally accepted law until the decision in the Boyd Case.

In *Adams v. New York State*, 192 *U. S.* 585, 24 *Snp. Ct.* 372, 48 *L. Ed.* 575, decided in 1903, the court said:

"The weight of authority, as well as reason, limits the inquiry to the competency of the proffered testimony, and the courts do not stop to inquire as to the means by which the evidence was obtained."

The rule laid down in *Greenleaf*, *Vol.* 1, § 254A, was distinctly approved, as well as the law of *Com. v. Dana*, above stated.

Then came the Weeks Case in 1914, in which the court distinguished the Adams Case on the ground that papers incidentally seized in the execution of a search warrant for gambling paraphernalia were competent evidence against the accused and their offer in testimony did not violate his constitutional privilege against unlawful search and seizure, and on the further ground that the courts in the course of trial would not make an issue to determine the question of unlawful seizure.

In the Weeks Case application was made in the court below, before the trial, for the return of private papers. This was not done in the Adams Case.

Assuming that the Weeks Case correctly states the law, it nevertheless seems to us that the return of the property, or its destruction, must depend, not only on its illegal seizure, but also upon the nature of the articles taken. It is argued broadly that if the search and seizure is illegal the thing seized, no matter what it is, cannot be used in evidence against the defendant at his trial.

[1] It is difficult to see any constitutional connection between the illegal seizure and the u e of the thing seized as evidence. The act the Constitution prohibits is the seizure, not the use of the article seized. The violation of the constitutional provision would seem to be complete when the seizure is made, and in that case the only remedy or redress the wronged party has is an action against the wrongdoer—the person who made the seizure. *People v. Mayen (Cal. Sup.)*, 205 *Pac.* 435, in which the leading cases, state and federal, are ably reviewed.

The denial of the use in evidence of articles illegally seized might discourage, and to a great extent prevent, illegal seizures, but it does not seem to us to be a sufficient reason for excluding such evidence at the trial. If a man's property is seized without a warrant, illegally seized, the person making the seizure can be and ought to be punished for his unlawful act, but such act should not prevent the use of the thing seized in evidence, and certainly not if its possession constituted the crime charged.

It is argued that if every article, the possession of which is made unlawful by statute, is admissible in evidence although illegally seized, the Legislature can nullify to a great extent the constitutional guaranty. The same argument was formerly unsuccessfully made in many cases against seizures with a warrant and searches without a warrant after legal arrest. But the courts have generally held that such seizures were not unreasonable and that such searches were not illegal. And we think that if articles illegally seized belong to the *corpus delicti* their use in evidence is not a violation of any constitutional provision.

[2] But the Supreme Court has said in the Weeks Case, and in several others, that property illegally seized cannot be used in evidence and must be returned if restoration is seasonably asked for. That conclusion may be intelligible and reasonable if the thing taken was something the person had a right to hold. Even though a person be suspected of a crime, if his property has been taken from him illegally, it would seem that it should be returned to him in a proper proceeding, regardless of indictment or approaching trial. If it is his property and his possession is lawful it is conceivable that he has a right to its restoration. But it does seem to us that, if the article illegally seized was something in which the suspect could have no right of property, its possession was unlawful, and it constituted in fact, as was said in the case of *Com. v. Dana, supra,* the *corpus delicti,* it should not be returned or destroyed.

In the present case the defendant has made a motion for the return or destruction of the liquor taken without a warrant, so that it may not be used as evidence against him at his trial. He

Opinion.

.does not expect its return, for possession would be unlawful. Such motion, therefore, indicates that the defendant has no right to the liquor, and that he cannot lawfully have it in his possession. What right then has he to ask for its destruction? The only answer, is that the liquor was unlawfully taken from him, and should be destroyed. This seems to us to be illogical, unreasonable, and unfair to the state in its effort to punish the criminal. Upon what theory of justice or reason has any one the right to have returned to him money he has stolen, a weapon with which he has committed a murder, or intoxicating liquor he has in his possession in violation of law, no matter by what means it was found and seized? If the liquor must be destroyed the result is that the person who made the illegal search is not punished, but the state is punished in being deprived of the use of the liquor to secure the wrongdoer's conviction. We do not believe the Constitution makers meant to be so solicitous for the interests of a person accused of crime as to exclude from the jury, not only the evidence of his guilt, but the thing the possession of which constitutes his crime. Such an article is in theory, and ought to be in fact, whenever and however taken, forfeited by the accused, and in the custody of the law. We are satisfied that no United States Supreme Court case has held the contrary. In *United States v. Kraus* (*D. C.*), 270 *Fed.* 578, it is said:

"Except for the character of the documents seized, the law in cases of unlawful searches is now well settled."

We do not say that the seizure of intoxicating liquor without a warrant is legal in this state. On the contrary, we say that such seizure is illegal, and the officer making it could be punished for his unlawful act. But we do say that, if intoxicating liquor is found in the possession of a person, and seized without a warrant, illegally seized, the person from whom it was taken is not entitled to its return or destruction, and it may be used as evidence against him at his trial without violating any constitutional provision.

In none of the Supreme Court cases was the article taken ordered to be destroyed, and in all of them the articles ordered to

be returned were the *property* of the accused. Only one of them was a liquor case, viz.: *Amos v. United States*, 255 *U. S.* 313, 41 *Sup. Ct.* 266, 65 *L. Ed.* 654. In that case the defendant was charged with having removed whisky, on which the revenue tax had not been paid, to a place other than a government warehouse, and of having concealed the same. The defendant asked, in the court below, that the whisky be returned to him, and in his petition described it as his private property which the district attorney intended to use at his trial as evidence against him. It will be noted that in the Amos Case the whisky was described as the private property of the defendant, and it came within the ruling of the preceding federal cases. The indictment was not for the unlawful possession of the liquor, as in the present case.

In the Weeks Case among the papers illegally seized were lottery tickets, and a number of letters, papers and other private property of the defendant, and it is a very significant fact that in his petition filed in the lower court, asking for the return of the property illegally taken, the lottery tickets were not mentioned. The plain inference is that it was deemed useless to ask for the return or destruction of articles that were instruments of the crime charged. The lower court directed the return of some of the articles, but permitted the government to retain and put in evidence certain letters and correspondence material to the case. Under the opinion of the Supreme Court the lower court was bound to return the letters retained, but it does not appear from the opinion that it would have been bound to return the lottery tickets. And, moreover, the court took occasion to state the real question involved:

"The case in the aspect in which we are dealing with it involves the right of the court in a criminal prosecution to retain for the purposes of evidence the letters and correspondence of the accused, seized in his house in his absence and without his authority by a United States marshal holding no warrant for his arrest and none for the search of his premises."

It is not a reasonable conclusion from this language that while letters and correspondence, the private property of the accused, should be returned, instruments of crime should also be.

And so we say that, where the article illegally taken is the basis of the charge, the possession of which constitutes the crime, and in which the defendant can have no property right, it does not have to be returned or destroyed, and can be legally used against him at his trial.

In the case of *Haywood v. United States (C. C. A.)*, 268 *Fed.* 795, it was said:

"Not all searches and seizures are forbidden. Consider, first, the character of the property that may be seized. It has never been deemed unreasonable to hunt for and take stolen property, smuggled goods, implements of crime, and the like. Inasmuch as the documents in question were the tools by means of which the defendants were committing the felonies, there was no immunity in the nature of the property."

In the case of *Gouled v. United States*, 255 *U. S.* 298, 41 *Sup. Ct.* 261, 65 *L. Ed.* 647 (1920), so much relied on by the defendant, the property illegally seized was private property, of evidential value only, and it was held that the seizure was in violation of the Fourth Amendment, and also that the admission in evidence of such papers was a violation of the Fifth Amendment to the federal Constitution, which provides that, "No person shall be compelled to be a witness against himself." In this case, as well as in *Amos v. U. S.*, it was held that objection to the admission in evidence of papers illegally seized could be made *at the trial*, and could be then determined in any case. To that extent the decision in the Weeks Case was disregarded.

In the well-considered case of *Elrod v. Moss*, 278 *Fed.* 125, the United States Circuit Court of Appeals recognized a distinction between the possession and seizure of private papers and goods forfeited to the government:

"Every constitutional or statutory provision must be construed with the purpose of giving effect, if possible, to every other constitutional or statutory provision, and in view of new conditions and circumstances in the progress of the nation and the state. [Cases cited.] Hence the provisions of federal and state Constitutions forbidding unreasonable searches must be construed in the light of the constitutional provision against the sale, manufacture, and transportation of intoxicating liquors. No man can have any right of property in contraband liquor, or any right to transport it. As soon as it comes into existence, it is forfeited. * * * The protection of the rights of the accused does not require that the Constitution be construed to exact the same degree of particularity of description in search warrants for contraband liquors,

because there is no right of property in contraband liquor, and hence there can be no danger to the citizen of being deprived of property which he is lawfully entitled to hold against the state."

The present case is a stronger case for the state than would be if the defendant had carried concealed a deadly weapon, which some courts have likened to a liquor case, because in the weapon case the defendant might have some property in the thing taken, for the unlawful act is not the possession, but the concealment. The present case is even a stronger one than the late case of *State v. Simmons*, 183 *N. C.* 684, 110 *S. E.* 591, because in that case, while the liquor seized was contraband, its possession did not constitute the crime.

In the Simmons Case the Supreme Court of North Carolina said:

"The defendant contends that *Adams v. New York* [192 *U. S.* 586] has been overruled in *Gouled v. U. S.* (*Feb.* 28, 1921) 255 *U. S.* 298, 41 *Sup. Ct.* 261, 65 *L. Ed.* 647, but we do not so understand it. We understand the distinction there to be that where the article itself is the *corpus delicti*, as illicit liquor, or a weapon illegally carried, and in similar cases, the article itself, however obtained, is admissible in evidence, but that the court, under the Gouled Case, will not permit a paper, surreptitiously or illegally taken from the possession of a defendant to be used as evidence in a matter in which it is not the basis of the offense for which the defendant is indicted."

In the case of *Sioux Falls v. Walser*, 187 *N. W.* 821, the Supreme Court of South Dakota, after reviewing the recent decisions of the United States Supreme Court, said:

"An examination of the decisions [United States Supreme Court] cited discloses that the language used in *State v. Madison* [*South Dakota case*] may have been too broad; but such examination also discloses that nothing said by the federal Supreme Court, in those cases, has any bearing upon the question before us; and this because of the difference in the facts. What is virtually held in those cases is: That the seizure of some kinds of property, for the purpose of using such property in evidence, would be, because of the nature of such property, an unreasonable seizure even under a valid search warrant; that property seized in the name of the government, but without warrant or under an invalid warrant, cannot be properly used in evidence where the possession of the property, by the person from whom seized was lawful, and the purpose of seizing such property was merely for its use as evidence; and that property, otherwise competent as evidence, is not inadmissible simply because it was wrongfully taken, even stolen, from its owner, if the government was in no sense a party to such wrongful seizure."

See recent case of *Burdeau v. McDowell*, 256 *U. S.* 465, 41 *Sup. Ct.* 574, 65 *L. Ed.* 1048, 13 *A. L. R.* 1159 (note).

In the South Dakota case, the court further said:

"There is a wide distinction between the seizure of property lawfully in the possession of a person and the seizure of property which is being held and used in violation of law, and in and to which property, because of such violation of law, the person in possession can claim no property rights. We are not concerned, at this time, with the question of the liability or nonliability of the officers for entering defendant's house, but only with the question as to whether or not any constitutional right of defendant was violated by the seizure of the property."

See, also, the many cases mentioned and commented on in the opinion. The court also said:

"In *United States v. Fenton* (*D. C.*), 268 *Fed.* 221, it was held that liquors and personal property coming under the law just quoted (National Prohibition Act) are, before their seizure, forfeited to the United States; that the seizure thereof, even if irregular, is not the seizure of the property of the parties in whose possession found; that such seizure does not violate Amendments 4 or 5 of the federal Constitution; and that the property so seized is, therefore competent evidence."

To the same effect are the following state Supreme Court cases: *State v. Bradley*, 96 *Me.* 121, 51 *Atl.* 816; *State v. Krinski*, 78 *Vt.* 162, 62 *Atl.* 37; *Williams v. State*, 100 Ga. 511, 28 *S. E.* 624, 39 *L. R. A.* 269; *People v. Mayen* (1922 *Cal. Sup.*), 205 *Pac.* 435.

We have said that the only liquor case before the United States Supreme Court was the Amos Case, in which the article seized was treated as the property of the defendant and ordered returned to him. In the following cases a similar order was made because the property of the defendant had been illegally seized: *State v. Peterson,* 27 *Wyo.* 185, 194 *Pac.* 342, 13 *A. L. R.* 1284; *People v. Halveksz*, 215 *Mich.* 136, 183 *N. W.* 752; *U. S. v. Slusser* (*D. C. Ohio*), 270 *Fed.* 818.

In no case that we have seen has the court ordered liquor illegally seized to be destroyed so that it could not be used as evidence, except the case of *U. S. v. Alexander* (*D. C. Fla.*), 278 *Fed.* 308, in which it was held that the defendant's property seized was "illicit liquor, commonly called 'moonshine', made contrary to law," and should be destroyed. The defendant had asked that the liquor be returned.

The state may ask for the destruction of the liquor, under our law, and does at the proper time, but certainly, in sound reason, the defendant cannot.

It is argued by the defendant, and clearly stated by the court in *U. S. v. Slusser, supra,* that an unlawful search cannot be justified by what is found; that a search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. There is no doubt about the correctness of that proposition. The contention of the state is that, no matter how unlawful the search and seizure may have been if the thing seized constitutes the *corpus delicti* and is something in which the defendant had no right of property or possession, it may be used as evidence against him at his trial, and he has no right to its return or destruction. It is in the custody of the law, and should remain there until it has answered its purpose as evidence, and is ordered to be destroyed by the court on its own motion or on the application of the state.

Even if such contention is inconsistent with the decisions of the United States Supreme Court subsequent to the Adams Case, we are convinced that the decided majority of the state courts have approved the decision in *Com. v. Dana,* and in conformity therewith we hold that the illegality of the seizure constitutes no good reason for excluding the thing seized from admission as evidence, if it is pertinent to the issue.

But after a careful examination of the federal cases, we are not convinced that the Supreme Court would hold, that intoxicating liquor, the possession of which is unlawful, as in this state, seized without a warrant, must be returned or destroyed, or that its use as evidence against the defendant would be a violation of any provision of the Constitution.

It is not necessary to decide whether the Fourth and Fifth Amendments to the federal Constitution apply to the action of the states because the corresponding provisions of our own Constitution are practically identical with them.

We have not deemed it necessary to consider whether the Fifth Amendment to the federal Constitution would be violated by the

admission in evidence of intoxicating liquor taken from the possession of the defendant without a warrant, because we assume that, if the defendant has no legal right to the return or destruction of the liquors, it can be legally used in evidence against him at the trial, even if the use as evidence of private property, illegally seized, would be violation of said amendment, which now seems very doubtful. In *Haywood v. United States, supra*, the court said:

"No compulsion is forbidden by the Fifth Amendment except testimonia compulsion."

And it was also said:

"Though the Fourth and Fifth Amendments stand side by side, each is as independent of the other as of any of the remaining safeguards in our federal Bill of Rights."

See, also, *People v. Mayen, supra.*

If the use in evidence of an article illegally seized would not be a violation of the Fifth Amendment, we cannot see any legal or logical reason for its exclusion.

We fully realize the importance, not to say the sacredness, of those constitutional guaranties designed to safeguard the person and property of the citizen, and particularly his freedom from unreasonable search and seizure; but we also appreciate the rights of the state and the necessity of protecting the lawabiding citizens against the criminal class. We believe the constitutional provisions should be and can be so construed as to give the wrongdoer all the rights and immunities the Constitution intended he should have, and at the same time furnish to society the protection it should have from the enforcement of the law and the punishment of the criminal.

In view of present conditions, especially the great difficulty experienced in enforcing the criminal laws, it would be unfortunate in some cases if the proof of defendant's guilt, the basis of the charge against him, the instrument of his crime, could not in any case be used against him at his trial if obtained by arrest or search without a warrant.

If such evidence could not be used in the case before the court it surely could not be used in any case.

[3]   2.   Could the defendant be indicted for the unlawful possession of spirituous liquor in view of paragraph 9 of the law of this state commonly known as the "Loose Law"?

That law provides that—

"Whenever liquors shall be seized in any room, building or place which has been searched under the provisions of this act,  *  *  *  [he] shall be subject to trial  *  *  *  on the charge of selling or keeping or storing for sale unlawfully such liquors."

. We are of the opinion that the defendant could be indicted for "unlawful possession" for two reasons:

1.   If the liquor had been seized under the provisions of the act the defendant could be indicted for selling or keeping for sale, for the law expressly provides that he shall be tried for such offense. But the defendant would also be guilty of having the liquors in possession, and we do not think the requirement of paragraph 9 would prevent his prosecution for that offense.  The requirement is not exclusive and the defendant could be indicted for either offense.

2.   The liquor in this case was not seized under the Loose Law.   It was seized without a warrant, and, therefore, illegally seized.  We have said that liquor so seized may be used against the defendant at his trial. If the liquor could be so used there is nothing in the law to prevent the state from trying the defendant for any offense he had committed.

Defendant's petition is dismissed.

RODNEY, J.:  It is with extreme reluctance that I find myself unable to agree with my associates on this question and in view of their ability and experience none but the most urgent and compelling reasons could prompt me to file a dissenting opinion. When sacred constitutional principles are involved, however, a proper respect for the rights and liberties of my fellow citizens demands that I should announce the law as I find it to be.

The Constitution of Delaware contains the following provisions:

*Article* 1, § 6.   "The people shall be secure in their persons, house, papers and possessions, from unreasonable searches and seizures;  and no

warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor, then, unless there be probable cause supported by oath or affirmation."

This article is not only a constitutional provision, but it forms a part of the Bill of Rights to which is added these impressive awords:

"We declare that everything in this article is reserved out of the general powers of government hereinafter mentioned."

The Constitution is comprised of a series of delegated rights of the individual citizens—delegated to the state as a political entity to be treated by it in a stipulated way for the welfare and betterment of all the people. The Bill of Rights consists of certain inalienable fundamental principles which a cautious people, warned by the example of historical experience, believed were absolutely necessary for the preservation of individual liberty, and, therefore, could not be delegated—not even to the body politic of which they themselves were members.

The security of the persons, houses and property from unreasonable search or seizure has, therefore, it would seem, been as sacredly guarded as is possible in a representative form of government. Nor is this provision of the Constitution a new one. In its precise terms it first appeared in the Constitution of 1792 and was continued verbatim in the Constitution of 1831 and in our present Constitution of 1897. It was accepted by the framers of the Constitution of 1852, which, on other grounds, was not accepted by the people. Prior to the time of the adoption of our first Constitution of September 20, 1776, there had been formulated on September 11, 1776, a Declaration of Rights and Fundamental Rules of the Delaware State, and *Section* 17 of this Declaration of Rights provides:

"That all warrants without oath to search suspected places, or to seize any person or his property are grievous and oppressive, and all general warrants to search suspected places, or to apprehend all persons suspected, without naming or describing the place or any person in special, are illegal and ought not to be granted."

The Constitution, therefore, provides that the people shall be "secure" from unreasonable searches and seizures. Webster de-

Opinion.

fines "secure" as "to make certain, to put beyond hazard," and it was this certainty, this removal beyond any peradventure of doubt, that was intended to be protected and guaranteed by the Constitution.

The evil sought to be met by the constitutional provisions reaches back to the general warrants issued by the Star Chamber. For a long time such was the state of English society that their issuance met little or no resistance, but how subversive to human liberty such practices had become was clearly shown by Lord Camden in *Entick v. Carrington*, 19 *How. St. Tr.* 1029, which case, it has been aptly said, "laid broad and deep the principles which were afterwards crystalized in the Fourth Federal Amendment."

It would avail but little to trace these warrants to our American shores and show how Otis fought against the writs of assistance in that historic trial in 1761, where, as John Adams so graphically says, "Then and there the child Independence was born." Suffice it to say that the first act of our fathers in founding our state and our nation was to establish in indelible form the thought that Chatham had when he so tersely said:

"A man's house is his castle; it may be a straw hut, the wind may whistle around it, the rain may enter, but the King cannot."

Some courts have thought that the constitutional guaranty against unreasonable searches and seizures was chiefly intended as a restriction upon the legislative branch of the government, but I prefer to think otherwise. In 24 *R. C. L.* 704, it is said:

"This restriction was intended to operate on legislative bodies, so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could in no event be made lawful; upon executives so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure whether confessedly without any color of authority or sought to be justified under the guise of legislative sanction."

What then are the reasons urged to prevent this court from placing its stamp of disapproval upon a search and seizure without a warrant?

First it is urged that it is and long has been a principle of law that evidence, if competent, relevant and material and offered

in the orderly course of the trial, will be received and the court will not stop to inquire into the manner in which it was obtained. This is undoubtedly true, but a correct application of the rule can only be obtained by an examination of the principle underlying it. That principle is that the court having entered into the trial of a criminal case is not to have its attention diverted to a collateral question, nor will it delay a criminal trial for the determination of an independent issue.

Some learned writers such as Mr. Wigmore contend that if the application for the return of the chattel taken without warrant furnishes a collateral issue if made at the time of the offer of evidence that issue cannot be made independent by the making of the application before trial for the return of the chattel. Can this be true? In the present matters the criminal cases are pending but have been continued and cannot be tried until the next term of court while now, before the court awaiting and demanding immediate attention are petitions by those who desire to be restored to that which has been taken from them without warrant of law.

If the stated principle underlying the above-mentioned rule of evidence be correct the rule itself can have no application to this case.

*Wharton's Criminal Evidence*, (10th *Ed.*) *p.* 1076, says:

"State courts, in some instances in express terms, have stated their indifference to the methods used to obtain demonstrative evidence and refuse to exclude it on the ground that it was illegally obtained. A different rule prevails in the United States courts."

This distinction as to the forum, if such there be, is not easily comprehended. The Fourth Amendment to the federal Constitution and *Section* 6 of article 1 of the Delaware Constitution are essentially and substantially the same. They each form part of the respective national and state Bills of Rights. Their functions in their respective fields are the same and their language almost identical. Are the rights of a citizen of Delaware under the Constitution of this state to be denied by the courts of this state when the same rights under the federal Constitution when infringed by

a federal officer will be maintained in a federal court? Other courts may reach different conclusions, but the courts of Delaware should yield to none in guarding and protecting the constitutional rights, privileges and immunities to the people.

There being no substantial difference between the wording of the federal and our state Constitution, it is, therefore, very proper that we look to the construction placed by the Supreme Court of the United States.

Extended citations can serve no useful end since there can be no doubt of the rulings of that court. In *Weeks v. U. S.*, 232 *U. S.* 383,34 *Sup. Ct.* 341, 58 *L. Ed.* 652, *L. R. A.* 1915B, 834, *Ann. Cas.* 1915C, 1177, the Supreme Court held that where papers were seized after a search without a warrant they must be returned to the defendant if a seasonable demand has been made therefor, before trial. This case has been approved by and followed in *Silverthorne Lumber Co. v. U. S.*, 251 *U. S.*, 385, 40 *Sup. St.* 182, 64 *L. Ed.* 319; *Gouled v. U. S.*, 256 *U. S.* 298, 41 *Sup. Ct.* 261, 65 *L. Ed.* 647; and *Amos v. U. S.*, 255 *U. S.* 313, 41 *Sup. Ct.* 266, 65 *L. Ed.* 654.

What are the facts on which this petition is based? No sufficient search warrant was issued upon oath or affirmation. By the legal mandate of no court or judicial officer did the authorities act. No proper judicial process lent color to their action, but merely responsive to an individual will the proceeding was taken regardless of the constitutional provision. No matter how beneficial to the people the prohibition laws may be, no matter to what extent the courts will go in enforcing them when proceedings are duly and regularly taken, this court cannot look on with listless gaze or decline to act when brought face to face with an unauthorized proceeding if this is to remain a government of law. Constitutional rights belong not only to the rich, but likewise to the poor, not only to the successful man of affairs, but also to the unfortunate and, indeed, to the incipient criminal in our midst.

Revolutions overthrow Constitutions and destroy them, but just as deadly are the insidious encroachments which from time to time creep in and change without the express sanction of the

people.    Against the latter the courts in maintaining the fundamental liberties of the people must be ever on their guard.

The state, however, contends that where the possession of liquor is in itself unlawful a distinction is to be made; when the possession of liquor is the *corpus delicti* no search warrant is necessary.

The possession of liquor by an individual is admittedly unlawful, but is that any reason why the state itself may *unlawfully* seize it from the individual? Is the violation of a penal statute to be proved by the obliteration of constitutional rights? As the Supreme Court of Florida justly says in *Atz v. Andrews*, 94 *South.* 329:

"Why a court should encourage its officers illegally to acquire evidence to be used against a person on trial for having illegally acquired some commodity is a problem in morals that is a bit confusing to one not a zealot or fanatic.

"For one to   *   *   *   possess intoxicating liquors is a crime; but it is a crime that generally affects a few persons in a restricted locality.   To permit an officer of the state to acquire evidence illegally and in violation of sacred constitutional guaranties, and to use the illegally acquired evidence in the prosecution of the person who illegally acquired the intoxicants, strikes at the very foundation of   *   *   *justice and where such practices prevail make law enforcement a mockery."

It is not the seizure by the state of the illegally possessed liquor that alone violates the Constitution.   The violation took place before the intoxicants were found, before, perchance, its existence was even known.

The constitutional violation took place at the first step of the unlawful search, the breaking of the door or other means of entry, the act of violence or premeditated stealth, it matters not which, that first gave an unauthorized entrance to the house.   Under what principle a constitutional violation as of that time is absolved or excused by the subsequent discovery of intoxicating liquor on the premises is difficult to determine.

An unlawful search cannot be justified by what is found.   A search that is unlawful when it begins is not made lawful when it ends by the discovery and seizure of liquor. It is against such prying, on the chance of discovery, that the constitutional amend-

ment was intended to protect the people. *U. S. v. Slusser* (*D. C.*), 270 *Fed.* 818.

This conclusion seems to have the support of all the recent cases concerning the illegal possession of liquors which have come to our attention with the exception of *State v. Simmons*, 183 *N. C.* 684, 110 *S. E.* 591. See *People v. Halveksz*, 215 *Mich.* 136, 183 *N. W.* 752; *U. S. v. Alexander* (*D. C. Fla.*), 278 *Fed.* 308; *U. S. v. Slusser* (*D. C. Ohio*), 270 *Fed.* 818; *State v. Peterson*, 27 *Wyo.* 185, 194 *Pac.* 342, 13 *A. L. R.* 1284.

It would seem that one foundation upon which the majority opinion is built is that, the possession of intoxicating liquor being unlawful, the defendant can have no property therein. With this result I cannot agree. Intoxicating liquor is personal property and the unlawfulness of its possession cannot destroy its character as property. Being property, it may belong to any one and must belong to some one. It has repeatedly been held that a chattel kept for an unlawful purpose may be the subject of larceny. *Osborne v. State*, 115 *Tenn.* 717, 92 *S. W.* 853, 5 *Ann. Cas.* 797. If it be subject of larceny in a prosecution for larceny, proof must be made both as to its character and as to its ownership regardless of the illegality of the possession. In *Com. v. Rourke*, 10 *Cush.* (*Mass.*) 397, it is held that money derived from the illegal sale of intoxicating liquors may be the subject of larceny. The true rule as I understand it is that laid down in *Com. v. Coffee*, 9 *Gray* (*Mass.*) 139, where it is said:

"The thing taken was property and the subject of larceny. The owner might forfeit and lose the property, if * * * it should appear that it was procured and held for an illegal purpose, but only upon such proof, and in the method the law points out."

It would seem to me there can be a property right entitling one to ask for the destruction of the chattel even where the return of the intoxicating liquor could not be granted because of the illegality of the possession. The law provides a mode of forfeiting and destroying illegally possessed liquor and it seems to me more politic that resort be had to orderly and legal process rather than unauthorized search and seizure.

If it be true that the defendant may have a property right in the chattel unlawfully taken from him, I cannot distinguish this case from the rulings of the United States Supreme Court hereinbefore referred to.

I find myself utterly unable to agree with the proposition that because the possession of intoxicating liquor is prohibited by state law (*malum prohibitum* and not *malum in se*) that, therefore, a search for such liquors which results in their discovery must not legally be commenced with a search warrant. Such is the natural result of the majority opinion in this case.

The Legislature has made the possession of narcotic drugs unlawful; so, too, is the possession of a hypodermic needle; and the logical result must be that whenever the Legislature chooses to make the possession of any article unlawful that from that time any search which results in the discovery of such article need not be predicated upon a legal search warrant, especially as to any use to be made of the seized article. Upon this reasoning the Legislature of this state can nullify the Bill of Rights. I cannot accede to this doctrine believing as I do that if the Legislature of this state passed a specific act expressly authorizing the search for intoxicaing liquor without a search warrant that such act would be held by this court to be unconstitutional since the provision relative to searches and seizures is a part of the Bill of Rights and "reserved out of the general powers of government."

For the reasons indicated above I feel that no property of a defendant illegally seized upon a search without a warrant can be used in evidence against him if timely objection be made thereto.