## Commonwealth v. Crocco.    No. 1.

*Liquor law—Liquor seized on premises—Possession—Return of liquor.*

Liquor seized in the dwelling of a defendant charged with illegal possession of liquor will not be ordered returned to him on the ground of irregularities in its seizure, where it appears from his own testimony that he bought the liquor in 1921 and has had possession of it ever since.

Petition by defendant for return of property, to restrain use of same, or any chemical analysis thereof, in evidence against him, and to have witnesses enjoined from testifying concerning the same. Q. S. Jefferson Co., Oct. Sess., 1923, No. 5.

*Walter E. Morris*, District Attorney, for Commonwealth.

*Charles J. Margiotti*, for defendant.

CORBET, P. J., Aug. 16, 1924.—A justice of the peace issued a search warrant, on a complaint in writing, upon oath and subscribed before him, "that there is probable cause to believe, and affiant has just and reasonable grounds for believing, and he does believe, that intoxicating liquor, the exact quantity being to your affiant unknown, is being unlawfully manufactured, sold, offered for sale, bartered, furnished, transported and possessed for beverage purposes . . . in and upon a certain place, room, house, building . . . occupied by and in possession of Thomas Crocco as a private dwelling, store, and used in whole or in part for business purposes, to wit, a . . . dwelling, situated in Beaver Township, Jefferson County, . . . more fully described as . . . two-story frame house. And that the following are the reasons for affiant's belief, to wit, numerous complaints that he was selling and making liquor."

On the hearing of this matter, the court permitted the taking of testimony, and complainant, W. H. Byerly, Constable of Beaver Township, called by defendant, testified: "Q. Did you have any evidence of any sales of intoxicating liquor prior to the complaint which you swore to for a search warrant? A. No more than what Russell Barker told me. Q. Did you have any evidence yourself of any sales having been made by Thomas Crocco, of intoxicating liquor in his private dwelling? A. No, sir." On cross-examination: "Q. Mr. Byerly, what information or knowledge did you have at the time you swore out this information for the search warrant? A. Well, in the first place, I got information from Sam Lowry. People told him a little about it and he told me about it. In the second place, there was people told me that there was a truck standing there and unloaded. Q. When did they tell you? A. I don't know exactly. Q. How many weeks or days or months before you made the search? A. I don't know; maybe two months, and maybe one month. Q. What other information did you have concerning the alleged liquor violations of Thomas Crocco? A. Barker told me a man told him he bought some off of Tom Crocco." With reference to being told of the truck standing and being unloaded, witness explained that this individual said "Tom Crocco got a load of whiskey." "He said he saw the truck stop there." That he got that information before the complaint. That the party is "a reputable person, worthy of belief," was "pretty good."

The search warrant having been issued, W. H. Byerly, the constable, Russell Barker and Harold Pierce, State policemen, and W. C. Neeley, a constable from Dubois, while on their way to the house, were met by defendant on the road and told him they were going to search his house. He did not, in testifying, state that he made any objection. The search was made and 164 bottles of whiskey found in the house, upstairs in a little hole or closet-like place about three feet wide and four or five feet long, in connection with one

of the bedrooms. The bottles were all quarts except one, which was a pint bottle. The constable took the liquor found into his custody and put it in the county jail building in the keeping of the sheriff of the county, where it now is.

In addition to the complaint for the search warrant, an information was made against the defendant, charging him with manufacturing, selling, offering for sale, bartering, furnishing, transporting, possessing and delivering intoxicating liquor for beverage purposes unlawfully, on which the defendant was arrested and bound to court.

The purpose of this application is to compel the restoration of the liquor to the defendant, and thus take it from the possession of the Commonwealth so that it cannot be given in evidence against defendant, either before grand jury or petit jury, and to prevent all persons having knowledge of any of the offences alleged against him, obtained in the course of the search or from its results, from testifying thereto.

As to his acquisition and possession of the liquor, the defendant testified at the hearing which has been mentioned that it was his; that he had had it since 1921, and he got it in the first part of April; that a fellow came around and asked him if he didn't want to buy some whiskey; name was Joe Caputo, from Philadelphia; he had automobile truck; that he came to his place first part of April, 1921; had the liquor with him on the truck; that he, defendant, bought twenty cases, twelve bottles in a case; they were quarts; that it was labeled or marked on the bottles what it was; that he drank seventy-six quarts of it himself; that it was bonded liquor, and he paid $40 a case, cash $800; that he just tasted one bottle and was satisfied that the rest was good liquor; that he bought the liquor for himself; for his own use as a beverage to drink; and, later, that his purchase was of one case of pint bottles, and the rest were all quart bottles.

Testimony was adduced at the hearing by the Commonwealth tending to show that defendant did not acquire the liquor in question as early as the first part of April, 1921, but more than two years later. It is not however, for the court to decide this issue, if it be for decision, but for a jury. For present purposes we are of opinion it need not be decided.

The defendant's contention, briefly stated, is that the search warrant was not based on a sufficient complaint, and that the search of his private dwelling was a violation of his constitutional rights.

The 18th Amendment to the Constitution of the United States went into effect Jan. 16, 1920. Thereafter "the manufacture, *sale* or *transportation* of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territories subject to the jurisdiction thereof, for beverage purposes," were thereby "prohibited."

The National Prohibition Act for the enforcement of that constitutional prohibition was enacted by Congress Oct. 28, 1919.

Section 3 provided: "No person shall, on or after the date when the 18th Amendment to the Constitution of the United States goes into effect, manufacture, *sell*, barter, *transport*, import, export, deliver, furnish or *possess* any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented."

Section 25 provided: "It shall be unlawful *to have* or *possess* any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property."

Section 33 provided: "After Feb. 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of the provisions of this title. Every person legally permitted under this title to have liquor shall report to the commissioner, within ten days after the date when the 18th Amendment to the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession. But it shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family, residing in such dwelling, and of his *bona fide* guests when entertained by him therein; and *the burden of proof shall be upon the possessor,* in any action concerning the same, *to prove that such liquor was lawfully acquired, possessed and used.*"

Section 4 of the Act of the General Assembly of this Commonwealth, approved March 27, 1923, P. L. 34, is: "It shall not be unlawful, however, to possess intoxicating liquor for beverage purposes in one's *bona fide* private dwelling, while the same is occupied and used by him as his dwelling only, *provided such liquor was lawfully acquired prior to the passage of this act,* and is for use only for the personal consumption of the owner thereof and his family, residing in such dwelling, and of his *bona fide* guests when entertained by him therein, which entertainment shall not be deemed an unlawful furnishing: *Provided, however, that proof of the possession of such intoxicating liquor shall be prima facie evidence that the same was acquired, possessed and used in violation of this act.*"

It is apparent from defendant's own disclosures, in addition to the other facts and circumstances in evidence, that he acquired the liquor in question unlawfully, by an illegal sale to and an illegal purchase by him; that his possession of it, so long as he had it, was unlawful and illegal; that he does not have, and never had, any property rights in it; that his possession was *prima facie* evidence that it was acquired, possessed and used in violation of law, and was being kept for the purpose of being sold, bartered, exchanged, given away, furnished or otherwise disposed of in violation of law, and is in no way excused or exempted on the ground of being the occupant of a private dwelling, having lawfully acquired the liquor prior to the passage of the act of assembly, and using it only for personal and family consumption, and by guests when entertained by him.

Without going into the matter further or in other respects, we are of opinion our decision can properly be rested on the following principles expressed in the opinion of our Superior Court by Keller, J., in the case of Com. *v.* Schwartz, 82 Pa. Superior Ct. 369, to wit:

"But, irrespective of the legality of the search warrant, we are of opinion that, as the goods seized were contraband and forfeited to the Commonwealth (Act of March 27, 1923, § 11, P. L. 34), and the defendant, as against the Commonwealth, could have no property in them, or right to their possession and use in violation of law, the court below rightly refused to order their return to the defendant and admitted them in evidence at the trial.

"There is no more reason why intoxicating liquors unlawfully possessed, no matter how obtained by, or how they came into the custody of, the Commonwealth, should be returned again to the criminal possession of the defendant than there is that stolen goods similarly obtained should be returned to the thief, or that counterfeit plates and money should be handed back to the

counterfeiter to pursue again his nefarious trade with them. If the defendant's civil or constitutional rights have been infringed by the manner of their seizure, he has his remedy, civil or criminal, as the case may be, against the offender. But the wrong done him as an individual in this respect, if any, is not rectified by committing another wrong against the public; the injury to his constitutional rights is not vindicated by freeing him of a charge of which 'he is guilty' and handing him back the articles which he has no legal right to possess, in order that he may again violate the laws of the Commonwealth: Rosanski v. State, supra.

"This position is supported by numerous decisions from other states, among which may be mentioned Rosanski v. State (Ohio), supra; Allred v. State (Ala.), 87 So. Repr. 842; State v. Simmons, 183 N. C. 684, 110 S. E. Repr. 591; Pasch v. People (Colo.), 209 Pac. Repr. 639; State v. Finsky (Wis.), 187 N. W. Repr. 201; State v. Pauley (N. D.)', 192 N. W. Repr. 91; State v. Chuchola (Del.), 120 Atl. Repr. 212."

And now, Aug. 16, 1924, the rule to show cause on the petition presented by defendant Oct. 19, 1923, is discharged and the prayer of the petition is refused.

From Raymond E. Brown, Brookville, Pa.