ALFRED S. RICKARDS, Defendant Below, Plaintiff in Error, v. THE STATE OF DELAWARE, Plaintiff Below, Defendant in Error.

574

(*December* 6, 1950.)

WOLCOTT, J., sitting.

HARRINGTON, Ch., TERRY, CAREY, J. J., SEITZ, V. Ch., and *Henry A. Wise, Jr.,* for Plaintiff in Error.

*Joseph H. Flanzer,* Deputy Attorney-General, for Defendant in Error.

WOLCOTT, J., delivering the opinion of the majority of the Court:

The plaintiff in error, hereinafter called the defendant, was convicted at the March Term, 1948, of the Court of General Sessions of New Castle County, of having driven an automobile while under the influence of intoxicating liquor. He seeks review of his conviction both by Writ of Error and Writ of Certiorari. Since the reasons urged for reversal are more consistent with review by Writ of Error, we will assume that the defendant has elected to proceed under that Writ.

Without stating the facts in detail, it will suffice to say that the defendant, driving his car on a highway of this state, drove it into the rear of a truck then parked on the side of the road. He then drove his car to a position in front of the truck and on the side of the highway, spoke to the owner of the truck, went into an adjacent woods for a distance of about fifty feet and laid down and went to sleep. A state police officer who arrived at the scene about half an hour later found the defendant asleep in the woods and arrested him without a warrant. He was retained in custody until the following morning when he was taken before a magistrate. While he was in custody, he was questioned and observed. The only testimony offered by the State of his intoxicated condition is that of the police officers who testified as to what the defendant did while in custody, his general condition and the strong odor of alcohol on his breath.[1]

Counsel for the defendant, in his brief, has presented three questions for our decision. The first two of these are in substance the same. These two assert that the evidence on which the State sought to convict is so conjectural and speculative that the offense was not proved beyond a reasonable doubt. We have reviewed the record and are satisfied that the State's case is

---

1. Owner of the truck had no sense of smell and, consequently, could not testify as to an odor of alcohol about the defendant.

sufficient to support the conviction if the testimony of the police officers was properly before the jury for its consideration.

The third contention of the defendant·is stated in his brief in the following language: "Should a man be deprived of his liberty unlawfully, compelled to perform acts, and the evidence thus obtained used as the sole basis to convict him?"

■ It does not clearly appear in the record that the precise argument defendant's counsel is making here was made at the trial. An objection on similar grounds was made during the taking of the testimony of a doctor testifying for the State. That objection was overruled, but the ruling could not have prejudiced the defendant since the doctor testified that from his examination made some time after the arrest he could not express an opinion as to the sobriety of the defendant. No objection, however, was made during the course of the testimony of the police officers upon which, in our view, the conviction must stand or fall.

It was not until the close of the trial that counsel for the defendant, through the medium of a motion for a directed verdict of acquittal, interposed any objection to the testimony of the police officers. Even then, the reasons assigned in support of the motion were not the same precisely as those now urged before us. At the trial below, the argument was based upon Section 5173, R. C. 1935, which makes it a felony to arrest without a warrant unless certain conditions subsequent are followed. The argument made in support of the motion was in substance that the jury was not entitled to believe the testimony of a witness who, it was contended, obtained his knowledge while committing a felony.

At no time during the trial was there a clear objection based upon the proposition that illegally obtained evidence is inadmissible for any purpose because of the constitutional guarantees against illegal search and seizure and against self-incrimination. However, this proposition was apparently in the mind of the Trial Judge

because defendant's motion for a directed verdict was overruled on the authority of *State* v. *Chuchola*, 2 *W. W. Harr.* 133, 120 *A.* 212, a prior ruling of the Court of General Sessions on that point.

■ ■ Ordinarily, appellate courts will not consider questions which have not been fairly presented to the court below. We think this is the proper rule, and we further think the question presented to us was not fairly presented below, nor were the usual exceptions made to preserve the defendant's right to raise the question by Writ of Error. However, the rule, that matters not presented at the trial may not be raised on review, is subject to two exceptions—(1) when the question is one of jurisdiction of the subject matter, and (2) when a question of public policy is involved. *Cf. Walter* v. *Keuthe,* 98 *N. J. L.* 823, 121 *A.* 624. Since the defendant seeks to raise here a question of the application of certain constitutional guarantees which has never been passed on by this Court, we are constrained to permit him to do so under the public policy exception to the rule, even though the objection was made below at best by implication.

The result, therefore, is that we are called upon to consider the broad question of the admissibility of evidence obtained by an alleged invasion of constitutional rights.

The defendant relies upon Section 5173, R. C. 1935, to support his contention that the evidence given by the police officers was illegally obtained. That section provides in part as follows: "If any person shall * * * arrest * * * any citizen of this State * * * unless such arrest shall be made upon legal process * * *, or unless such arrest be made to prevent a breach of the peace, or the commission of some crime * * *, or to detain a person where there is probable cause to believe he has recently committed a crime and that without such arrest he would escape justice, and in all cases where arrests shall be made to prevent a breach of the peace or the commission of some crime

\* \* \* the person or persons so arrested shall be, forthwith and without any intermediate incarceration, taken [before a committing magistrate] ; and such person or persons, so offending, shall be guilty of felony, \* \* \*."

We are concerned with that portion of Section 5173 which authorizes the arrest of a person without warrant when "there is probable cause to believe he has recently committed a crime." The word "crime" is not here limited in meaning. In our opinion it embraces both felonies and misdemeanors, so that plainly Section 5173 purports to be applicable to the case at bar, even though the defendant was arrested for a misdemeanor. *Colts* v. *District of Columbia,* 59 *App. D. C.* 224, 38 *F.* 2d 535, 538; *Bell* v. *Commonwealth,* 167 *Va.* 526, 189 *S. E.* 441.

Relying upon this section, the defendant argues that the testimony of the police officers on which the defendant was convicted was obtained as a result of the doing of an illegal act, that act being the failure to take the defendant after his arrest "forthwith and without any intermediate incarceration" before a committing magistrate.

Section 5173, R. C. 1935, was originally enacted February 24, 1863,[1] and provided in substance that no arrest of a white citizen shall be made without a warrant unless such arrest was made to (1) prevent a breach of the peace, or (2) prevent the commission of some crime, and further provided that in cases where arrests were made to prevent (1) a breach of the peace, or (2) the commission of some crime, the person so arrested should be forthwith taken before a committing magistrate. It is to be noted that the section as originally enacted provided for two exceptions to the prohibition against arrest without warrant, and provided specifical-

1. 12 *Laws of Delaware, Chapter* 271.
2. 18 *Laws of Delaware, Chapter* 691.

ly that in each instance the person arrested should be forthwith taken before a committing magistrate.

On April 19, 1889, the Act of 1863 was amended[3] to add a third exception to the prohibition against arrest without warrant, viz., "to detain a party where there is probable cause to believe [that] he has recently committed a crime and that without such arrest he would escape justice." The amendment of 1889, while adding a third exception to the prohibition against arrest without warrant, failed to include the third exception in the requirement that a person so arrested must be forthwith and without intermediate incarceration taken before a committing magistrate.

The Act of 1863, as amended by the Act of 1889, and as further amended[1] to make its provisions applicable to all citizens regardless of race, is now found in our law as Section 5173, R. C. 1935.

■■ The history of Section 5173 makes it plain that the authority given to arrest without warrant for the third exception to the prohibition against doing so is not limited by the subsequent proviso contained in the section. Having specifically, in the case of the first two exceptions, provided for the person arrested pursuant to them to be taken forthwith before a magistrate, the failure to so specifically provide in the case of the third exception when it was added by amendment can mean only that the Legislature intended the proviso not to be applicable with respect to it. This construction extends to misdemeanors the authority to arrest without warrant on reasonable suspicion, an authority which, with respect to felonies, peace officers had at common law. 4 Am. Jur., Arrest, Sec. 24, p. 17.

■ The result, therefore, is that the arrest in the case at bar, if it is to be tested under Section 5173, was legal. According-

---

3. 21 *Laws of Delaware, Chapter* 85.

ly, if Section 5173 is applicable to the case at bar, the premise upon which the defendant's argument is based, i. e., the illegality of the arrest of the defendant, is destroyed.

We have construed the provisions of Section 5173 for the reason that it was necessary to do so in order to answer the precise argument made before us in the defendant's behalf. However, for reasons which appear hereafter, we have concluded that it has no application in the case at bar.

 Section 5173, as finally amended, was adopted in 1889. By its terms, it purports to govern the conduct of all peace officers, irrespective of the offense for which the arrest is being made. In 1929, what is now Section 5683, R. C. 1935, was enacted by the General Assembly. This section provides in part that certain officials, among them state highway police officers, "are hereby empowered to arrest upon view and without warrant any person or persons violating any of the provisions of this Chapter. * * *" Section 5683 is Section 145 of Chapter 165 of the Revised Code of 1935. The defendant was convicted under Section 81 of Chapter 165, Rev. Code 1935, § 5619, which makes it a crime to operate a motor vehicle under the influence of intoxicating liquor. Since the defendant was arrested for a violation of a provision of Chapter 165, Section 5683 purports to be applicable to his arrest.

 It is impossible to reconcile Section 5173 and Section 5683 in order to make them apply to the same offense. The two statutes are contradictory. Section 5173 is a grant of authority to peace officers broader than originally existed at common law. Section 5683—a later statute—is as to the Motor Vehicle Code a restatement of the more restricted common law authority of peace officers to arrest for misdemeanors without warrant. Obviously, the two cannot apply simultaneously to the same

arrest. This being so, the later statute in point of time must prevail. It is, therefore, an implied amendment to the eailier statute in so far as the third exception contained within it purports to apply to arrests for violations of the Motor Vehicle Code. Amendments by implication are not favored but when a subsequent Act is so inconsistent with and repugnant to a prior Act that reconciliation is impossible, an amendment by implication of the prior Act necessarily follows. *Mayor and Council of Wilmington* v. *State ex rel. Du Pont,* 5 *Terry* 332, 57 *A.* 2d 70.

Since Section 5683 authorizes state police officers to arrest only upon view for violations of the Motor Vehicle Code, and since it is undisputed that the arrest in the instant case was not made upon view but was apparently made upon the belief that a crime had been committed, it follows that the arrest of the defendant was illegal. The arrest being illegal and the testimony upon which the State seeks to convict the defendant having been obtained solely as a result of the illegal arrest, we are faced with the necessity of deciding the question of the admissibility of illegally obtained evidence.

At common law, evidence was admissible in court no matter how obtained. No objection could be made to the admission of such evidence based upon the alleged illegality of the method by which it was obtained. 8 Wigmore on Evidence, Section 2183.

Originally in this Country, in practically all jurisdictions, despite the constitutional guarantees against self-incrimination and illegal search and seizure, the common law rule of the admissibility of illegally obtained evidence was followed. However, in *Boyd* v. *U. S.,* 116 *U. S.* 616, 6 *S. Ct.* 524, 29 L. *Ed.* 746, it was held that the Fourth Amendment of the Federal Constitution prohibiting unreasonable search and seizure was related to the Fifth Amendment prohibiting self-incrimination and that the effect

of the guarantees found in those two amendments could be relied upon by defendants to object to the admission into evidence of documents seized by unlawful search. A series of United States Supreme Court decisions followed *Boyd v. U. S., supra,* and the rule now followed in the Federal Courts is that evidence obtained illegally as a result of the violation of a Federal Constitutional guarantee may be objected to at trial and excluded from evidence. *McDonald v. U. S.,* 335 *U. S.* 451, 69 *Ct.* 191, 93 *L. Ed.* 153; *Johnson v. U. S.,* 333 *U. S.* 10, 68 *S. Ct.* 367, 92 *L. Ed.* 436; *Trupiano* v. *U. S.,* 334 *U. S.* 699, 68 *S. Ct.* 1229, 92 *L. Ed.* 1663.

Article I, Section 6, of the Constitution of Delaware is substantially identical with the Fourth Amendment of the Federal Constitution preventing unreasonable searches and seizures. Article I, Section 7, of the Constitution of Delaware prohibits compulsory self-incrimination and is substantially the same as the Fifth Amendment of the Federal Constitution.

Following the decision in *Boyd v. U. S., supra,* many of the states began to apply the Federal rule when the constitutional guarantees in this respect were, for all practical purposes, identical. An appendix is found to the opinion in *Wolf* v. *People of the State of Colorado,* 338 *U. S.* 25, 69 *S. Ct.* 1359, 93 *L. Ed.* 1782, from which it appears that, in 1948, thirty of the states followed the common law rule, while seventeen followed the Federal rule. Among the majority accepting such evidence, Delaware is listed because of *State v. Chuchola, supra.* However, *State v. Chuchola* does not stand squarely as a refusal to follow the rule applied in Federal Courts for the reason that, the Court of General Sessions, seeking to distinguish the Federal cases, ruled that the property illegally seized could be used as evidence because it was alcoholic liquor, in which, by the then law, the defendant could have no property right.

In the later case of *State v. Episcopo, 7 W.W.Harr.* 439, 184 *A.* 872, the Court of General Sessions interpreted the Chuchola case as not having been decided entirely on the fact that, under the law then existent, intoxicating liquor was not property. Thereupon, on the authority of the Chuchola case, evidence illegally obtained was admitted in evidence. These two rulings seem fairly to place the Court of General Sessions of this state with the majority of state courts holding that illegally obtained evidence may be admitted in evidence.

It would serve little purpose to catalog numerous decisions of State and Federal Courts discussing the rule. There is a direct conflict between the respective points of view; they are irreconcilable.

Courts admitting such evidence, while recognizing the existence of the constitutional guarantees against unreasonable search and seizure and compulsory self-incrimination, nevertheless, hold that the protection of those guarantees does not require evidence obtained in violation of them to be excluded. In answer to the argument that the guarantees have been violated by state officials, it is said that the state, itself, has committed no violation because it adopts as its acts only the legal acts of its officials, and that officials who illegally violate constitutional guarantees do so on their own initiative and not under the sponsorship of or for the benefit of the state. The remedy of the individual whose rights have been violated is stated to be a civil action against the official who has invaded his constitutional rights.

Courts following the Federal rule adopt the view that the efficient prosecution of criminals cannot justify a deliberate invasion of the right of the citizen to be made secure against the violation of specific constitutional guarantees, and that the suggested remedy of a civil action is as a practical matter no remedy at all. The Federal rule is a practical attempt to help preserve the constitutional guarantees.

■ We prefer the rule followed in the Federal courts. We conceive it the duty of the courts to protect constitutional guarantees. The most effective way to protect the guarantees against unreasonable search and seizure and compulsory self-incrimination is to exclude from evidence any matter obtained by a violation of them.

We believe that as long as the Constitution of this state contains the guarantees to the citizen referred to, we have no choice but to use every means at our disposal to preserve those guarantees. Since it is obvious that the exclusion of such matters from evidence is the most practical protection, we adopt that means. It is no answer to say that the rule hampers the task of the prosecuting officer. If forced to choose between convenience to the prosecutor and a deprivation of constitutional guarantees to the citizen, we in fact have no choice. Moreover, within constitutional limits, the Legislature may change the rules defining the limits of legal police action. It may well be that the Legislature will desire to reconsider Section 5173 and Section 5683 in the light of modern needs.

■■ We, accordingly, are of the opinion that *State* v. *Chuchola, supra,* and *State v. Episcopo, supra,* were erroneously decided and overrule them. The proper rule to be applied in the criminal courts of this state is that evidence obtained by a vloiation of constitutional guarantees is inadmissable at the trial of the person whose guarantees have been violated, if timely objection is made thereto. We suggest the adoption of an appropriate rule by the Court of General Sessions to cover the subject. Cf. Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U. S. C. A.

The conviction of the plaintiff in error is reversed.

TERRY, J., and SEITZ, V. C., concur.

HARRINGTON, Chancellor (dissenting):

The arrest of Rickards, the plaintiff in error, was illegal and the testimony of the officer who was the main witness in the court below related to his observations after the arrest with respect to the actions and statements of Rickards and the smell of liquor on his breath. There was some corroborating testimony by another officer and by a civilian relating to substantially the same facts observed after the arrest, though the civilian had no sense of smell and could not detect the odor of liquor on Rickards. The relevancy of all of this testimony to support the charge in the indictment is not questioned by the majority of the court. They are of the opinion, however, that it was improperly admitted because it related to things observed while Rickards was being held illegally under arrest and conclude that the judgment of the Court of General Sessions should, therefore, be reversed. I am unable to agree with that conclusion.

The majority opinion concedes that at common law pertinent evidence was admissible, though improperly and even illegally procured. *Commonwealth v. Dana,* 2 *Metc.* (*Mass.*) 329; *Commonwealth* v. *Tibbetts,* 157 *Mass.* 519, 32 *N. E.* 910; *People* v. *Defore,* 242 *N. Y.* 13, 150 *N. E.* 585; 8 *Wigmore on Evidence,* 3rd Ed., §§ 2183, 2184. Most of the state courts follow that rule (Wigmore on Evidence, § 2183) and the Delaware Court of General Sessions has repeatedly applied it. See *State v. Episcopo,* 7 *W. W. Harr.* (37 *Del.*) 439, 184 *A.* 872; *State v. Chuchola,* 2 *W. W. Harr.* (32 *Del.*) 133, 120 *A.* 212.

Article 1, Section 7 of the Delaware Constitution of 1897 pro-
Article 1, Section 7 of the Delaware Constitution of 1897 provides that "In all criminal prosecutions, the accused * * * shall not be compelled to give evidence against himself," but I do not think it governs this case.

When pertinent evidence, tending to prove guilt, is before the court, it should not be excluded on the theory that individual

rights under the constitutional guarantees are superior to the rights of the people of the State to protection from violations of the law. See *State v. Reynolds,* 101 *Conn.* 224, 125 *A.* 636; *People v. DeFore, supra.* If an overzealous officer exceeds his authority he can be sued or prosecuted and punished like any other person. See *Wigmore on Evidence,* §§ 2183, 2184.

Moreover, Rickards in the legal sense was not compelled to incriminate himself while he was held under arrest. See *People v. DeFore, supra; People v. Adams,* 176 *N. Y.* 351, 68 *N. E.* 636, 63 *L. R. A.* 406, affirmed 192 *U. S.* 585, 24 *S. Ct.* 372, 48 *L. Ed.* 575; *People v. Dennis,* 132 *Misc.* 410, 230 *N. Y. S.* 510. The testimony of the witnesses in the court below merely related to their observations of Rickards and of his acts during that time. See *People v. Dennis, supra.*

In *People v. DeFore, supra,* the court commenting on a provision in the New York Constitution, similar to Article 1, Section 7 of our Constitution, said: "This immunity, like the statutory one against unreasonable search and seizure, was considered in the Adams Case *(People v. Adams,* 176 *N. Y.* 351, 68 *N. E.* 636, 63 *L. R. A.* 406, *supra).* We limited it to cases where incriminatory disclosure had been extorted by the constraint of legal process directed against a witness." [242 N. Y. 13, 150 N. E. 589.]

This rule is no longer followed by the Supreme Court of the United States. Pertinent evidence, though improperly procured by a person not an officer or agent of the State, is always admissible. *Burdeau v. McDowell,* 256 *U. S.* 465, 41 *S. Ct.* 574, 65 *L. Ed.* 1048. But the majority of the court seem to regard an overzealous officer as a greater danger to the community than an unpunished violator of the law. I am unable to agree with that reasoning and think the judgment of the court below should be affirmed.

CAREY, J., concurs in this dissent.

RICHARDS, C. J., did not participate in this case.