PEARL SIBBLEY, Plaintiff below, Appellant, v. THE STATE OF DELAWARE, Defendant below, Appellee.

RALEIGH BARKSDALE, Plaintiff below, Appellant, v. THE STATE OF DELAWARE, Defendant below, Appellee.

(*February* 11, 1954.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*William E. Taylor, Jr.,* for appellants.

*H. Albert Young,* Attorney-General, and *E. N. Carpenter, II,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, Nos. 28 and 29, 1953.

SOUTHERLAND, C. J.:

The essential questions presented are two:

(1) Is an order denying a petition to suppress evidence under 11 *Del. C.* § 2310 a final judgment from which appeal lies to this Court?

(2) If so, did the Superior Court have jurisdiction to grant the relief sought by the petition?

The facts are these:

At some time prior to April 20, 1953, the Court of Common Pleas issued a search warrant for the search of a certain automobile and of its occupants. On the date mentioned two dectectives of the State Police, operating a police car, found the automobile parked on a public street in the town of Newport. Appellant Sibbley was the driver and appellant Barksdale was a passenger. Officer Eckrich went to the driver and told her that he was a State policeman and suspected her of carrying numbers slips in the car. She denied the accusation, and the officer then asked her consent to search the automobile and to search her person. After some further conversation she assented. The officer searched her handbag but found no slips.

In the meantime Barksdale had left the car, apparently on an errand, and was accosted by officer Sweeney. Sweeney told him that he was suspected of carrying numbers slips, and asked

permission to search him. Sweeney also warned him that he did not have to consent. He gave his permission, but the officer found nothing on him at that time.

The officers, who were in plain clothes, then asked appellants to come with them to the police station for a further search. They assented. At the police station nothing was found on appellant Sibbley, but in the course of searching Barksdale a roll of numbers slips fell or was dropped upon the floor. Each of the defendants was thereafter arrested and charged with violations of the lottery statutes, and informations embodying the charges were filed in the Court of Common Pleas. These charges are still pending, proceedings thereon having been stayed by orders of the Superior Court.

The search warrant was never executed.

On May 11, 1953, appellants filed separate motions in the Superior Court, seeking orders to supress the evidence obtained by the search. Each petition alleged that the evidence had been unlawfully seized from petitioner's person without consent or unlawfully seized as a result of an illegal search of the automoble.

These motions were filed under the provisions of 11 *Del. C.* § 2310 which is a part of Chapter 23, dealing with *Search and Seizure.* It provides:

"Upon application to any Judge of the Superior Court by the owner or occupant (if any) of the house or place searched and only upon such application of such owner or occupant, the Judge may direct that—

"(1) Any papers, articles or things invalidly seized or seized as a result of an invalid search shall be returned to the person from whom the same were seized.

"(2) Any papers, articles or things obtained as the result of an invalid search or seizure shall be suppressed and shall not be admitted as evidence in any criminal case whatsoever."

Rule 41 (e) of the Superior Court is based upon this statute. It provides:

"Motion for Return of Property and to Suppress Evidence. An application made in accordance with the statute for the return and suppression of property obtained as a result of an unlawful search and seizure shall be made by motion supported by the affidavit of the person on whose behalf the motion is made. The motion shall state the grounds upon which it is made and shall set forth the standing of the person on whose behalf the motion is made to make such application. The motion shall be made before the trial or hearing in which the property seized may be used as evidence, unless opportunity therefor did not exist or the moving party was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing. If the motion relates to property held in connection with a proceeding pending before a court of inferior jurisdiction the prothonotary shall cause a copy of such motion to be served upon the judge of such court. Unless otherwise ordered by the Superior Court, such service shall operate as a stay of said proceedings before such inferior court until the motion has been formally disposed of in the Superior Court. Issues of fact shall be determined by the court on affidavits or in such other manner as the court directs."

On July 10, 1953 the motions were heard by the Superior Court on the oral testimony of the officers, called as witnesses by petitioners. No other testimony was offered. Holding that the search had been consented to, the court by orders of August 31, 1953 and September 21, 1953 denied the motions on the merits. These appeals followed.

1. The first question we must decide is whether this Court may entertain the appeals. Our jurisdiction, under Article IV, § 11, of the Constitution, *Del. C. Ann.*, to review "all matters in error in the judgments and proceedings" of the Superior Court is limited to the review of final judgments, as at common law. *Trowell v. Diamond Supply Co.*, 7 *Terry* 318, 91 *A.* 2d 797.

Is the denial of the motion to suppress evidence under 11 *Del. C.* § 2310 a final judgment? The answer to this question turns upon the nature of the proceedings below, that is, upon whether they were independent or plenary proceedings or only off-shoots of the criminal prosecutions in the Court of Common Pleas.

The State contends that if such a motion is filed after indict-ment or information, whether pending in the Superior Court or any other court, it is merely an off-shoot or "splinter" of the criminal proceeding and any order thereon is interlocutory only and not final. Decisions of the federal courts, before and after the adoption of the Federal Rules of Criminal Procedure, are cited. Accordingly, the Attorney General has moved to dismiss these appeals.

The Attorney General argues by analogy to the Federal practice that the statute contemplates two kinds of proceedings. If an indictment has been found or information filed, he says, no matter in what court, the proceeding is an off-shoot or "splinter" of the criminal proceeding, and the order therein is interlocutory. In the absence of a pending criminal charge, the proceeding is analogous to a common law proceeding for the recovery of property, is a plenary suit, and the order is a final one.

It is to be observed that the federal procedure does not sup-port the precise contention made in this case. Under the federal decisions, a motion filed in a court other than the one in which the criminal proceeding is pending is an independent suit. *Cogen v. U. S.*, 278 *U. S.* 221, 49 *S. Ct.* 118, 73 *L. Ed.* 275. It is true that the "splinter" rule prevails in the federal practice, that is, if the motion is made in the criminal cause, by a party to it, and seeks suppression of the evidence at the trial, it is deemed to be a mere incident of the criminal case, and an order upon it is not appealable. *Cogen v. U. S., supra.* But this is a doctrine judicially evolved in the federal courts, apart from statute. It is now restated in Rule 41 (e) of the *Federal Rules of*

*Criminal Procedure,* 18 *U. S. C. A.* The duality of the proceedings under the federal rule is apparent on the face of it. The motion may be filed either in the district in which the property was seized, or in the district where the trial is to be had.

Not so with our statute. The application may be made "to any Judge of the Superior Court". Presumably it may be filed in any county, as in the case of a transitory civil action. Moreover, the statute contains no language indicating any differentiation in respect of the character of the proceeding between an application to a judge sitting in the court where an indictment has been found and any other application. Nor does Rule 41(e) of the Rules of Criminal Procedure of the Superior Court, quoted above, make any such distinction. It is clearly based upon § 2310, and not upon federal Rule 41(e). Since the Superior Court rules were in general patterned upon the federal rules, the marked difference in wording is significant.

The result is unfortunate, but we see no escape from the conclusion that the act of 1951,[1] now codified as 11 *Del. C.* § 2310, created a special proceeding, independent of any pending criminal cause. It is in the nature of a civil remedy, designed for the protection of civil rights guaranteed by the state and federal Constitutions.

The enactment of the statute in 1951 was no doubt prompted by the decision in *Rickards v. State,* 1950, 6 *Terry* 573, 77 *A.* 2d 199. In that case the Supreme Court adopted the exclusionary rule, evolved in the federal courts, that evidence obtained by a violation of a person's constitutional rights may not be used to secure his conviction. With respect to the procedure to be followed, the court suggested the adoption of an appropriate rule on the subject by the Court of General Sessions.

No rule of court was then adopted. Instead the legislature enacted the statute referred to, 48 *Del. L. Ch.* 303, dealing with the general subject of search and seizure, in which was included

---

[1]48 *Del. L. Ch.* 303.

the section creating the special remedy by petition to a Judge of the Court of General Sessions (now the Superior Court).

We have said that the result is unfortunate. This is so because the existence of the statutory remedy will frequently result in serious delays in law enforcement—a persistent evil in American criminal practice so well recognized as to need no elaboration here. The law of search and seizure abounds with close questions of law and of fact. The provisions of § 2310 may, at the option of the defendant, be availed of to require a determination by this Court, in advance of trial, of any such question involving an alleged illegal search of a "house or place". Moreover, the temptation to one charged with crime to exhaust the resources of delay by specious claims of illegality will often be irresistible.

The case before us supplies an example. The prosecution was begun in April of last year. A motion to suppress evidence was heard in July and decided in August. The appeal was filed September 22nd and argument before us was had January 19th of this year. No dilatory tactics appear. The defendants were entirely within their rights in following the course they did. Yet the result is nearly a year's delay in the trial of a misdemeanor under the gambling laws.

We fully realize the importance of a vigilant protection of the fundamental right of any accused to be arrested and tried in strict accordance with law. But we fail to see why this right may not be enforced by the court in which the prosecution is had under appropriate rules requiring the filing of a timely motion in the proceeding itself. If failure to file a preliminary motion is excusable, the point may be raised at the trial. *Rickards v. State, supra.* In this manner the defendant's rights would be adequately protected, and unreasonable delay avoided. We think that the statute serves little purpose in protecting a defendant, and at the same time creates a real barrier to prompt enforcement of the criminal law. It seems most likely that the framers of the statute contemplated such a result. Yet it cannot be avoided.

It may be thought that in making these comments upon the statute we are trespassing upon the legislative domain. It is quite true that the wisdom of legislative policy is not, generally speaking, a matter for judicial review or comment. But the matter here considered is one of procedure only. Increasingly, in recent years, it has been recognized by the bench and the bar, and by the public, that the mechanics of litigation—the pleadings, the motions, the whole body of practice—is a subject that should be regulated by rule of court. As early as 1925 our legislature conferred upon the judges unlimited rule-making power in civil cases, 34 *Del. L. Ch.* 226; and like authority in criminal cases was given by the act of 1951, 48 *Del. L. Ch.* 209. Thus § 2310 is a departure from established principle and it is an anomaly. Relating as it does to the rule-making power of the courts, it is, we think, a proper subject for comment by the courts.

The State's motion to dismiss the appeal is denied.

2. Did the Superior Court have jurisdiction to entertain the petition?

The statute, in so far as it authorizes a plenary proceeding to suppress evidence, confers a special right theretofore unknown to Delaware procedure. It confers that right upon the person specified therein and upon him only. It says:

"Upon application to any Judge of the Superior Court by the owner or occupant (if any) of the house or place searched *and only upon such application of such owner or occupant,* the Judge may direct * * *."

The appellants do not contend that the petition was filed by the owner or occupant or any "house or place searched".[2] It

---

[2]Historically, the phrase "house or place" was treated as referring to a fixed locality. Cornelius, *Search and Seizure* (2nd Ed.), § 232, and cases cited; 1 *Bish. Crim. Proc.* (4th Ed.), § 240. Whether, in modern times, an automobile is to be deemed "a place" within the meaning of the search and seizure statutes, may be debatable. Some of the statutes and decisions appear to recognize a distinction between a house or fixed locality and a ship, automobile, or

is their contention that the evidence sought to be suppressed was seized as a result of an unlawful search of the person of Barksdale.

■ The State contends that the search warrant statutes contained in Chapter 23 of Title 11 of the *Code* do not attempt to authorize or deal with searches of the person,[3] and, in particular, that no one but the owner or occupant of the house or place is entitled to invoke the provisions of § 2310. Appellants do not contend the contrary. At all events we are of opinion that one who does not claim to be the owner or occupant of any "house or place" may not maintain a petition under § 2310. The Superior Court has so held. *State v. Carter*, 89 *A*. 2d 131.

Appellants seek to sustain the jurisdiction of the lower court on two grounds:

First, it is said that Rule 1 of the *Rules of Criminal Procedure of the Superior Court* authorizes the proceeding. That rule provides:

"Rule 1. Scope. These rules govern the procedure in the Superior Court of the State of Delaware in all criminal proceedings and the procedure before Justices of the Peace, Courts of Common Pleas in each of the counties, the Municipal Court for the City of Wilmington, The Family Court for New Castle County and the Juvenile Courts for each of the counties, in proceedings preliminary to indictment by grand jury or the filing of an information in the Superior Court."

---

other vehicle, holding that search of a vehicle for contraband articles, if made upon probable cause, may be without warrant. *Carroll v. U. S.*, 267 *U. S.* 132, 45 *S. Ct.* 280, 69 *L. Ed.* 543, 39 *A. L. R.* 790, and note at page 829. But see *U. S. v. DiRe*, 332 *U. S.* 581, 68 *S. Ct.* 222, 92 *L. Ed.* 210. We express no opinion upon that question, since appellants do not seek to sustain the jurisdiction of the Superior Court on that ground.

[3]Except, perhaps, as § 2310 authorizes a petition by the owner or occupant of premises for the return of property unlawfully seized from the person as an incident to a search of a house or place. *Cf. Lido Social Club v. State*, 7 *Terry* 582, 86 *A*. 2d 859.

We are unable to see what bearing this rule has upon the matter. It deals with procedure in the lower courts in proceedings leading to indictment or information in the Superior Court. In no possible view could it enlarge the jurisdiction conferred by § 2310.

Second, it is said that the Superior Court has inherent authority to entertain a proceeding of this kind. This contention confuses the Superior Court's control over criminal causes pending before it with control over causes pending in other courts. Of course, under the *Rickards* case, the Superior Court may entertain such a proceeding in connection with a case pending before it, quite apart from statute; but it has no jurisdiction to control proceedings in other courts except as expressly conferred by law. To the extent (if any) that the common-law actions are adapted to the recovery of property illegally seized, the Superior Court's jurisdiction is undoubted; but a summary proceeding to suppress evidence held in connection with a prosecution in another court is unknown to the common law. It exists to the extent, and only to the extent, authorized by statute.

█ It follows that the Superior Court had no jurisdiction to grant the relief sought, and that it should have dismissed the petitions. We do not overlook the fact that the petitions set forth alternative sets of facts. It was alleged that the evidence sought to be suppressed was seized *either* as a result of an illegal search of the person *or* as the result of an illegal search of an automobile. The testimony showed that the evidence was obtained as the result of search of the person. Thus appellants misconceived their remedy, and should have been remitted to the Court of Common Pleas, where by timely objection to the evidence the question could have been presented. *Rickards v. State, supra.*

The order appealed from must be modified so as to direct a dismissal of the petitions. The cause is remanded to the Superior Court of New Castle County for that purpose.