Lido Social Club, a corporation of the State of Delaware, Petitioner, v. State of Delaware, Respondent.

(*February* 15, 1952.)

LAYTON, J., sitting.

*David B. Coxe, Jr.*, for Petitioner.

*Januar D. Bove, Jr.*, and *Louis J. Finger* for Respondent.

Superior Court for New Castle County, No. 52, January term, 1952.

LAYTON, J.:

The arrest and seizure here under consideration were made pursuant to *Vol. 48, Del. Laws, Chapt.* 303, *Sec.* 64 which provides:

"5343-*CC. Sec.* 64. Search Without Warrant; Lawful When Incident to an Arrest. A search of a house or other place may be made without a warrant if:

"(a) The search is made incidental to a lawful arrest; and

"(b) The search is made contemporaneously with the arrest; and

"(c) The arrest is made on the premises searched; and

"(d) The premises are under the control of the person arrested; and

"(e) The search is made in order to find and seize either (1) the fruits of the crime, or (2) the means by which the crime was committed, or (3) weapons and other things to effect an escape from custody; and

"(f) The search without a warrant is necessary to prevent the escape or removal of the person or thing to be searched for."

Petitioner contends that subsections A and F were violated in and about the seizure of the evidence here sought to be suppressed and, moreover, that the entire proceeding was invalid because the real purpose underlying this affair was not the arrest of Merlonghi, which was a pretext, but rather a general "fishing" expedition for evidence.

I find as a fact, that, (a) this search was incidental to a lawful arrest, (b) made contemporaneously therewith, (c) the arrest was made on the premises searched, (d) it was admitted for the purpose of this proceeding that the premises were under the control of Merlonghi and (e) the search was made to find and seize "the means by which the (alleged) crime was committed."

Whether or not the conditions of subsection F were violated requires some further consideration of the facts, the statute and applicable federal law. The information upon which the warrant for the arrest was based was obtained from an officer in the United States Air Force presently stationed at Langley Field, Virginia. He had visited the Lido Club on several occasions. Apparently by prearrangement, this officer flew to the local air base several days prior to January 14 and there gave a statement to a police dectective. On the fourteenth of January, he flew again to this city, gave another statement and identified Merlonghi by means of a photograph. About three o'clock P.M. he apparently had to return to Langley Field, but that night, immediately prior to the arrest, he again flew back to this city, was further questioned and signed warrants against Merlonghi and another person. The answer of the Attorney General in this proceeding seems to concede that the warrants were signed about 11:45 P.M. on the fourteenth. Curiously enough, both the officer in question and Inspector Rich of the Police Department were of the opinion that these warrants were not signed until about 1:00 A.M. of the fifteenth, or even later, just prior to the arrest.

Counsel for petitioner argues (1) that these facts demonstrate that there was ample time to secure a search warrant prior to the arrest and (2) that it is inherent in subsection F that a

search incident to a valid arrest may not be maintained unless a reasonable time did not exist in advance for the obtaining of a search warrant.

Whether or not a search warrant might have been secured prior to this occurrence is debatable. I believe that the police had at least tentatively decided to make this arrest in the afternoon for certain officers were then alerted for the purpose. On the other hand, Inspector Rich testified that it was again necessary to talk with the Air Force Lieutenant that night before a final decision was arrived at as to the making of an arrest. If the State carried the burden of establishing that time did not permit the obtaining of a search warrant prior to this event, I would be in some doubt as to the result. However, no such condition is imposed by the Statute which merely states that the search without (search) warrant must be necessary to prevent the removal of the thing to be searched for. In this connection, I would say that had the police arrested Merlonghi under the circumstances presented here, and then left the premises to obtain a search warrant with the expectation that the articles in question would have been found on their return, they would have exhibited a degree of naivete not reasonably to be expected in the normal conduct of human affairs.

The statute imposing no such requirement, did the manner in which this affair was conducted offend the safeguards offered by *Article 1, Sec. 6 of the Constitution of Delaware* against unreasonable searches and seizures.[1] On this question, *U. S. v. Rabinowitz*, 339 *U. S.* 56, 70 *S. Ct.* 430, 435, 94 *L. Ed.* 653 is directly on point. The facts were these. Acting upon information that defendant possessed and concealed forged obligations of the United States, namely stamps, federal agents armed with an arrest warrant entered defendant's office, arrested him and proceeded to make a one and a half hour search which revealed

---

[1]Practically identical with the Fourth Amendment to the Federal Constitution.

the evidence in question. In denying the defendant's petition to suppress the evidence thus discovered, the Supreme Court said in part:

"A rule of thumb requiring that a search warrant always be procured whenever praticable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against unreasonable searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano v. United States*, 334 *U. S.* 699, 68 *S. Ct.* 1229, 92 *L. Ed.* 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to

procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

I conclude that the conditions of subsection F were satisfied and no constitutional guaranty violated.

Petitioner's further contention that this arrest and search were so tainted with the atmosphere and purpose of a mere "fishing" expedition for evidence as to be wholly invalid is not persuasive. The fact that the arrest warrant was for a crime committed at a prior date, the large force of police involved in the arrest of a single man, the vagueness of the testimony of an assistant City Solicitor as to his purpose in being there and the fact that the police who first entered did not telephone those who came shortly thereafter that Merlonghi was in the Club are pointed to as indicative of the fact that Merlonghi's arrest was but a pretext to gain access in order to ransack the place for such evidence of illegal use as might be found. There are obvious fallacies in this argument. The fact that this evidence was seized on an arrest warrant charging the commission of a crime four days earlier, while possibly going to the question of its admissibility, is not necessarily evidence of an intention to conduct a "fishing" expedition. The unexplained reasons for the presence of an assistant City Solicitor at the scene is not particularly significant. That an alleged gambling house contained ninety-six occupants is sufficient to justify the judgment of Inspector Rich in employing a substantial number of officers in the affair. It is not my function to examine and criticize the motives, planning and execution of a large scale police action otherwise valid on its face. The fact remains that Merlonghi was there and that alleged evidence of crime was discovered. Petitioner's argument is founded more on inference than fact. *Go-Bart Importing Co. v. U. S.*, 282

*U. S.* 344, 51 *S. Ct.* 153, 75 *L. Ed.* 374; and *Taylor v. U. S.*, 286 *U. S.* 1, 52 *S. Ct.* 466, 76 *L. Ed.* 951, wherein such searches were condemned as invalid, are not authoritative because of substantial factual differences. This ground of contention is dismissed.

Petitioner's motion to suppress a certain pair of dice found upon the person of one of the occupants of the Lido Club on the same evening remains to be considered. The circumstances were these. The original entry into the Lido Club was made by certain uniformed officers without objection. Shortly thereafter, a number of detectives headed by Inspector Rich arrived and were admitted by one of the uniformed officers who had assumed control of the doors. As the detectives entered, there was a general scramble on the part of many of the occupants to go out the rear. One man, named Cooperman, reached into his trouser pockets and a detective, thinking he was reaching for a gun or knife, grabbed his arms and searched his pockets finding two pairs of dice. While I am of the opinion that the officer was justified in searching Cooperman under the circumstances, the fact remains that the possession of dice is no crime, he was not arrested and stands charged with no offense.

Any consideration of this feautre of the petition to suppress requires a further examination of *Sections* 66 and 67 of the *Statute* and of *Section* 51 of *House Bill* 301. These sections are now quoted.

"5343-*EE. Sec.* 66. Circumstances Under Which Papers, Articles or Things Which May Be the Subject-Matter of a Search Warrant May Be Seized. Any papers, articles or things which may be the subject-matter of a search warrant may be seized under each or any of the following circumstances:

"(a) By any peace officer without a search warrant where such paper, article or thing is in plain view without the necessity of a search.

"(b) Where such paper, article or thing is discovered pursuant to a valid search, with or without a search warrant, wheth-

er or not such paper, article or thing is an object of the search or is described in the search warrant.

"Provided that the papers, articles and things seized, together with the person in whose possession or custody the same shall be found shall be brought forthwith before a Judge, Justice of the Peace or other magistrate to be dealt with according to law."

"5343-*FF*. Sec. 67. Return of Papers, Articles or Things Invalidly Seized or Seized as the Result of an Invalid Search; Application to Court; by Whom May Be Made. Upon application to any Judge of the Court of General Sessions by the owner or occupant (if any) of the house or place searched and only upon such application of such owner or occupant, the Judge may direct that:

"(a) Any papers, articles or things invalidly seized or seized as a result of an invalid search shall be returned to the person from whom the same were seized.

"(b) Any papers, articles or things obtained as the result of an invalid search or seizure shall be suppressed and shall not be admitted as evidence in any criminal case whatsoever."

"5343-*C*. Sec. 51. Searching for Weapons. Persons Who Have Not Been Arrested. A peace officer may search for a dangerous weapon any person whom he has stopped or detained to question as provided in *Section* 50, whenever he has reasonable ground to believe that he is in danger if the person possesses a dangerous weapon. If the officer finds a weapon, he may take and keep it until the completion of the questioning, when he shall either return it or arrest the person. The arrest may be for the illegal possession of the weapon."

The state takes the position that this motion to suppress, insofar as it concerns the taking of the dice as the result of the search of a person, may not be maintained by the owner of the premises because the Statute as a whole relates only to things or

objects found as the result of the search of a house or place and not of a person. Concededly, the Act seems in general to contemplate the search of a house or place but certain language of *Sections* 66 and 67 indicates that objects or things found on a person are within its purview. Thus, in *Section* 66, we have this language: "* * * together with *the person in whose possession* or custody the same shall be found * * *". And in *Section* 67 the same thought is repeated, "* * * any papers, * * * seized, * * * as the result of an invalid search shall be returned *to the person from whom the same were seized.*[2]

Moreover, the search of a person as an incident to a valid arrest is just as permissible as a search of the premises. It seems to me that *Section* 66 should be construed, not in a restrictive sense, but as the grant of an additional right not heretofore enjoyed by an owner of a premises, namely, the right to petition for the suppression and return of evidence found either on the premises or from his person or that of a third person while on the premises as the result of an invalid arrest. Inasmuch as it amounts to a grant rather than the denial of a right, no constitutional question is involved. That the language of the section seems to repose the right to petition to suppress exclusively in the owner of the premises may raise serious questions hereafter, but that is not before me here.[3] While no written opinions were filed, it appears that both Judge Herrmann and Judge Terry have ordered the return of evidence to a third person searched on the owner's premises, pursuant to a petition by the owner. *Cephas v. State, August* 31, 1951; *Ciroalo v. State, December* 28, 1951. I conclude that the owner of the premises may maintain this proceeding.

Finally, was the seizure of the dice valid? I have already obeserved that the possession of dice is not of itself illegal

---

[2]My emphasis.

[3]Query. Suppose Cooperman were indicted for gambling, the seizure of the dice found to be invalid, and the owner of the premises refused to file a petition to suppress on his behalf?

and Cooperman was neither arrested nor charged with any offense or seized upon suspicion of the commission of an offense. Curiously enough, however, the actual search of Cooperman seems to have been permissible under the provisions of *Section 51 of House Bill* 301 above quoted. Nevertheless, the original search having failed to reveal a weapon, it seems to me that the act of compelling Cooperman to turn over the dice was invalid in connection with the other circumstances here shown. It results, therefore, that the seizure of the dice was illegal and that they should be suppressed as evidence and returned to Cooperman.

Insofar as concerns the remainder of the evidence taken in connection with this affair, the prayers of the petition to suppress are denied.